[Cite as *State v Johnson*, 2016-Ohio-8261.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2016CA00069 |
| CALVIN RICHARD JOHNSON | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Criminal appeal from the Stark County Court of Common Pleas, Case No. 2015CR1295(B)

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      December 19, 2016

APPEARANCES:

For Plaintiff-Appellee

JOHN FERRERO
STARK COUNTY PROSECUTOR
110 Central Plaza South, Ste. 510
Canton, OH 44702

For Defendant-Appellant

DEREK LOWRY
116 Cleveland Avenue N.W.
Suite 800
Canton, OH 44702-1732

*Gwin, P.J.*

{¶1} Appellant Calvin Johnson ["Johnson"] appeals his convictions after a jury trial in the Stark County Court of Common Pleas.

*Facts and Procedural History*

{¶2} Sade Edward has known Johnson for several years. Prior to August 2015, Edwards had not seen Johnson for 10 years. Sometime around August 2015, Edwards reestablished contact with Johnson through social media. When he came to Alliance, Edwards and Johnson began a romantic relationship. Johnson would often arrive with his brother, Corey Campbell and Chris Burnette. Burnette goes by the nicknames "Chicago" and "Cuz."

{¶3} On August 10, 2015, Edwards drove to Akron, Ohio to pick up Johnson, Campbell and Burnette. They drove to Edwards' home, were bored and decided to drive around. At the intersection of Morgan and Garwood in the city of Alliance Johnson tells Edwards to stop the car and park. Campbell and Burnette get out of the car. Edwards remained in her car listening to music and looking at Facebook.

{¶4} On August 10, 2015, at approximately 10:30 p.m., Albert Magee picked up some beer and some blunt rolls[1] and drove to Cleave Johnson's residence. He parked his car out front. Cleve came outside and the two men drank a beer together. While they were drinking, Magee saw Edwards drive by in a Silver Pontiac Grand Am. Magee walked down the nearby alley because he thought Sade would stop and visit. Sade never stopped, so Magee went back to talk with Cleve.

---

[1] "Blunt rolls" are shells or papers commonly used to roll marihuana. 2T. at 493.

{¶5} After Sade drove by, Magee heard footsteps coming down the alley. He looked over and saw a guy with a gun who smiled and immediately started shooting at him. Magee then saw Johnson who also fired a gun at him. A third man with dread locks, (Campbell) was running around behind the two shooters- "like a chicken with his head cut off." Magee tried to crawl to his car to retrieve his pistol for protection. As he was crawling, Magee was hit with gunfire and saw Cleve fall. He then heard one of the shooters say, "This is how we do it in Chicago, motherfucker, Chicago style."

{¶6} After the shooting, Burnette, Johnson and Campbell ran back up the alley toward Edwards's car. Burnette ran past the car and continued down the street. Johnson and Campbell arrived after Burnette and jumped into Edwards's car. Johnson climbed into the front passenger seat and Campbell got into the right rear passenger seat. They picked up Burnette further up the street. Edwards drove them back to her house and asked them what happened. They did not say anything except that they needed to get out of town. Edwards then drove the three men back to Burnette's home in Akron.

{¶7} On the trip to Akron, Edwards learned about a shooting that evening. She got a call from her mother who told her that Magee had been shot. She overheard Johnson say to Burnett, "Cuz why did you start shooting so fast? I thought we was going to get closer." She heard Johnson and Burnett talk about throwing their poles (i.e., guns) under a porch. She heard Campbell tell Johnson and Burnett that they should have thrown the guns in the boat. After Edwards dropped them off, Johnson called and asked her to take them back to Alliance to get their guns.

{¶8} The Alliance City police responded to a shots fired call at the Cleve Johnson's address. When they arrived, the officers found Magee. Magee told the officers

that "Calvin Johnson" had shot him and that Johnson and another shooter had been standing in the corner of the alley. Police showed Magee a photo taken from a Facebook page and he identified Johnson and another male in the photo, Chris Burnett, as shooters.

{¶9} The officers also found Cleve Johnson unresponsive lying in a fetal position in the middle of his front walk. Cleve had blood coming out of his nose and mouth and brain matter coming out of his head. Bystanders advised the responding officers that there were two shooters but later they refused to get involved.

{¶10} Both Magee and Cleve Johnson were transported to the hospital where Cleve died several days later. The Stark County Coroner determined that Cleve's death was due to a gunshot wound to the head. A bullet had destroyed much of his brain and skull. Multiple surgeries were performed to repair the shattered femur bone in Magee's right leg.

{¶11} At the hospital, the officers swabbed Magee's hands for gun residue and found none. The officers also showed Magee a Facebook picture of Burnett and Johnson. The note above Burnett's picture said "Chris Chicago Burnette." Magee identified Calvin Johnson and Burnett as being the two shooters and Edwards as the driver of the silver Pontiac Grand Am.

{¶12} Officers also responded to a suspicious person call at Edwards's home and observed a Silver Pontiac Grand Am parked outside the residence. At first, Edwards was not truthful about where she had been on the evening of the shooting. After the detective confronted her with information gathered in the investigation Edwards later changed her story. Edwards told the officers that she had been driving Johnson, Campbell and Burnett around Alliance that evening and that she believed that Johnson and Burnett were

involved in the shooting. Edwards took the officers to a house with a boat in the lot the place she overheard Burnette and Johnson discuss having thrown their guns. At the location, the police recovered a Highpoint magazine, a .9-millimeter Highpoint pistol and a SCCY Industries .9-millimeter pistol from under the porch. The officers testified that there was evidence that the guns had recently been fired. The recovered Highpoint magazine fit inside the Highpoint handgun. The magazine removed from the SCCY was empty and the gun had a .9-millimeter Luger round in the chamber. Officers also recovered eighteen shell casings in the alley where Magee stated Burnette and Johnson shot their guns.

{¶13} Edwards provided the investigating officers with the cell phone number for Johnson and Campbell. Sprint provided GPS coordinates for the cell phones. The GPS established that Johnson and Campbell were traveling Westbound on Interstate 80 in Ohio. Ohio State Highway Patrol Officers stopped Johnson and Campbell as they were pulling into an Erie Service Plaza in Sandusky, Ohio and the two were placed under arrest.

{¶14} DNA samples were collected from Burnette, Johnson, Campbell and Edwards and submitted to the Bureau of Criminal Investigation (BCI) for analysis. Samuel Troyer, a forensic DNA analyst compared the DNA samples from the four co-defendants with swab samples collected from the guns and the magazines. Troyer found that the swabs taken from the .9-millimeter Highpoint and Highpoint magazine had a DNA profile consistent with Burnette. Johnson, Campbell, Sade, and Albert were excluded as possible contributors of the samples. Troyer testified that Burnette's statistical profile for the DNA collected from the Highpoint handgun occurred in one out of every five billion six

hundred and nine million people (5,609,000,000). Troyer also testified that the statistical profile collected from the magazine can only be found in one out of every one hundred and ninety-two trillion eight hundred billion people and that this is significant because there are only seven billion people on earth.

{¶15} Troyer testified he examined the trigger swab, gun swab, and magazine swab for the SCCY .9-millimeter handgun and magazine. Troyer stated that the trigger swab included the DNA of at least one male but that there was too much of a DNA mixture to make any further comparisons. He also stated that the gun swab had too much DNA mixture for any comparisons and the magazine swab had a complex DNA mixture not suitable for comparisons.

{¶16} The recovered guns were submitted to BCI for analysis. Andrew Chappell a forensic scientist for BCI determined that both firearms were operable. Chappell determined that eight shell casings collected from the area where Burnette had been standing were fired from the .9 millimeter Highpoint to the exclusion of all other firearms. Chappell testified that the other shell casings collected from where Johnson had been standing were fired from the SCCY .9-millimeter handgun.

{¶17} Fourteen latent fingerprints, lifted from Sade Edward's vehicle, were submitted to BCI for analysis. Michelle Snyder, a fingerprint analyst examined the latent fingerprints. Snyder testified that only three of the lifted fingerprints had value. She identified the left index and left middle finger prints lifted from Sade's vehicle as a match for Calvin Johnson. Snyder also found the right thumbprint collected from the vehicle to be a match for Corey Campbell. She testified that as a matter of protocol, her results

were passed on to a second examiner for verification. Sarah Pivovat, the second examiner put a notation on Snyder's report verifying that she agreed with Snyder's results.

{¶18} Prior to Burnette's trial Corey Campbell and Sade Edwards each pled guilty to felony counts of obstructing justice. Campbell received a two-year sentence. In exchange for truthful testimony, the State agreed to recommend community control for Sade. Thereafter, the court agreed to separate trials for Johnson and Burnett. In December of 2015, Burnett was found guilty of two counts of complicity to commit felonious assault and the firearm specifications and tampering with evidence. Burnett was acquitted on the murder charge.

{¶19} The jury found Johnson guilty of complicity to commit murder with a firearm specification, two counts of felonious assault, each with firearm specifications, and tampering with evidence.

{¶20} Johnson was sentenced to serve fifteen years to life for the murder of Cleave Johnson and the felonious assault charge wherein Cleave Johnson was the victim was merged with the murder conviction; three years on each of the two gun specifications; and thirty six months on the tampering with evidence conviction. The court further ordered the sentences for the murder of Cleave Johnson, the felonious assault against Albert Magee and the gun specifications to be served consecutively, and the tampering with evidence sentence, to be served concurrently. Johnson received an aggregate sentence of twenty-eight years to life.

*Assignments of Error*

{¶21} Johnson raises six assignments of error,

**{¶22}** "I. THE ADMISSION OF "VERIFYING FINGER PRINT EXAMINER'S" CONCLUSIONS VIOLATED PETITIONER'S RIGHT TO A FAIR TRIAL.

**{¶23}** "II. THE APPELLANT WAS DENIED HIS RIGHT TO A FAIR TRIAL DUE TO JUDICIAL BIAS.

**{¶24}** "III. THE STATE DENIED THE APPELLANT A FAIR TRIAL BY USING WITNESSES TO VOUCH FOR THE TRUTHFULNESS OF SADE EDWARD'S STATEMENTS.

**{¶25}** "IV. THE APPELLANT WAS DENIED HIS RIGHT TO FAIR TRIAL DUE TO PROSECUTORIAL MISCONDUCT.

**{¶26}** "V. THE APPELLANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

**{¶27}** "VI. THE TRIAL COURT'S FINDING OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."

I.

**{¶28}** In this assignment of error, Johnson argues that the introduction of a fingerprint result verification by a non-testifying witness, Sarah Pivovat, violated his right to confrontation and denied him a fair trial.  Johnson concedes that he did not object to this testimony at trial.

**{¶29}** "[F]orfeiture is the failure to timely assert a right or object to an error, and * * * 'it is a well-established rule that "an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or

corrected by the trial court." *State v. Rogers*, 143 Ohio St.3d 385, 2015–Ohio–2459, 38 N.E.3d 860, ¶ 21.

**{¶30}** The accused may raise a forfeited claim on appeal through Crim.R. 52(B). Pursuant to Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

**{¶31}** The Court in *Rogers* reaffirmed that even if an accused shows the trial court committed plain error affecting the outcome of the proceeding, the appellate court is not required to correct it. Id. at ¶ 23. The Supreme Court stated:

> [W]e have "admonish[ed] courts to notice plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *Barnes* at 27, 94 Ohio St.3d 21, 759 N.E.2d 1240, *quoting State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

*Rogers* at ¶ 23; Accord, *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002); *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus; *State v. Perry*, 101 Ohio St.3d 118, 120 802 N.E.2d 643(2004).

**{¶32}** The defendant bears the burden of demonstrating that a plain error affected his substantial rights. *United States v. Olano*, 507 U.S. at 725,734, 113 S.Ct. 1770, 123 L.Ed.2d 508(1993); *State v. Perry*, 101 Ohio St.3d 118, 120 802 N.E.2d 643(2004).

**{¶33}** Even if we assume arguendo that plain error occurred, Johnson has failed to demonstrate that the plain error affected his substantive rights.

**{¶34}** In the case at bar, Michelle Snyder ("Snyder"), who was qualified as an expert, without objection, testified that she received 14 latent prints from the crime scene

and that only three of the collected fingerprints had any value.  Previous testimony by law enforcement officers established that the fingerprints had been collected from both the crime scene and Sade Edward's vehicle and that they were submitted to the crime lab for analysis.  Snyder testified that she performed a comparison analysis and established that two fingerprints collected from Sade Edward's vehicle matched the left index and left middle finger of Calvin Johnson.  Snyder explained that, as a normal step in the BCI protocol, her conclusions are passed on to a second examiner for verification.  If the second examiner agrees with her conclusions, the verifier puts a notation on the first examiner's notes stating she or he agrees with the results.  If the examiner disagrees, they send the results to a third examiner.  Snyder testified that Sarah Pivovar, the second examiner, followed protocol, and verified with a written notation that their results matched.

**{¶35}**  In *State v. Harris*, 142 Ohio St.3d 211, 2015-Ohio-166, 28 N.E.3d 1256, the Ohio Supreme Court observed,

> Crim.R. 52(A) defines harmless error in the context of criminal cases and provides: "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."  Under the harmless-error standard of review, "the *government* bears the burden of demonstrating that the error did not affect the substantial rights of the defendant." (Emphasis sic.)  *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 15, *citing United States v. Olano*, 507 U.S. 725, 741, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).  In most cases, in order to be viewed as "affecting substantial rights," "'the error must have been prejudicial.'  (Emphasis added.)"  *State v. Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d

222, ¶ 7, *quoting Olano* at 734, 113 S.Ct. 1770. Accordingly, Crim.R. 52(A) asks whether the rights affected are "substantial" and, if so, whether a defendant has suffered any prejudice as a result. *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, ¶ 24–25.

Recently, in *Morris*, a four-to-three decision, we examined the harmless-error rule in the context of a defendant's claim that the erroneous admission of certain evidence required a new trial. In that decision, the majority dispensed with the distinction between constitutional and non-constitutional errors under Crim.R. 52(A). Id. at ¶ 22–24. In its place, the following analysis was established to guide appellate courts in determining whether an error has affected the substantial rights of a defendant, thereby requiring a new trial. First, it must be determined whether the defendant was prejudiced by the error, i.e., whether the error had an impact on the verdict. Id. at ¶ 25 and 27. Second, it must be determined whether the error was not harmless beyond a reasonable doubt. Id. at ¶ 28. Lastly, once the prejudicial evidence is excised, the remaining evidence is weighed to determine whether it establishes the defendant's guilt beyond a reasonable doubt. Id. at ¶ 29, 33.

*Harris*, ¶ 36-37.

{¶36} In the case at bar, we find that Snyder's testimony concerning the verification of her fingerprint test result did not influence the verdict, was harmless beyond a reasonable doubt and when excised the remaining evidence establishes Johnson's guilty beyond a reasonable doubt. Even without Snyder's verification testimony the jury

had ample evidence that Johnson had been in Edwards's car the night of the shootings. At trial, Edwards testified that Johnson was in her car on the night in question. Cory Campbell, Johnson's brother and co-defendant testified on Johnson's behalf at trial that Johnson was in Edwards's car at the time of the shootings. Further, the jury was able to see and hear Magee who testified that he recognized Johnson as one of the persons who had shot him and Cleve Johnson.

{¶37} Johnson's first assignment of error is overruled.

II.

{¶38} In his second assignment of error, Johnson argues, that because the judge sustained four of the state's objections during the closing argument of defense, and overruled Johnson's one objection during the state's rebuttal, the judge displayed judicial bias toward defense counsel that denied him a fair trial. Johnson concedes that he did not object to this purported display of bias.

{¶39} "Pursuant to R.C. 2701.03, only the chief justice of the Supreme Court of Ohio or his or her designee has the authority to determine a claim that a common pleas court judge is biased or prejudiced." *Stanley v. Ohio State Univ. Med. Ctr.*, 10th Dist. No. 12AP–999, 2013–Ohio–5140, ¶94. Accordingly, this Court is without jurisdiction to consider a claim of judicial bias. In any event, we conclude, "appellant has failed to overcome the presumption of lawfulness and impartiality in the trial judge's participation in this case." *Stanley v. Ohio State Univ. Med. Ctr.*, 10th Dist. No. 12AP–999, 2013–Ohio–5140, ¶ 00.

{¶40} "Judicial bias has been described as 'a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation

of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts.'" *State v. Dean*, 127 Ohio St.3d 140, 2010–Ohio–5070, ¶ 48, *quoting State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463 (1956), paragraph four of the syllabus.

**{¶41}** "A judge is presumed not to be biased or prejudiced, and a party alleging bias or prejudice must present evidence to overcome the presumption*." Wardeh v. Altabchi*, 10th Dist. No. 03AP–1177, 2004–Ohio–4423, ¶ 20. "The appearance of bias or prejudice must be compelling to overcome this presumption of integrity." *Trott v. Trott,* 10th Dist. No. 01AP–852, 2002 WL 392286 (Mar. 14, 2002), citing *In re Disqualification of Olivito*, 74 Ohio St.3d 1261, 1263 (1994). "'The existence of prejudice or bias against a party is a matter that is particularly within the knowledge and reflection of each individual judge and is difficult to question unless the judge specifically verbalizes personal bias or prejudice toward a party.'" *Eller v. Wendy's Internatl., Inc.*, 142 Ohio App.3d 321, 340 (10th Dist. 2000), *quoting Okocha v. Fehrenbacher*, 101 Ohio App.3d 309, 322 (8th Dist.1995). "[D]issatisfaction or disagreement with a judge's rulings of law are legal issues subject to appeal. A judge's opinions of law, even if later found to be erroneous, are not by themselves evidence of bias or prejudice and thus are not grounds for disqualification." *In re Disqualification of Corts*, 47 Ohio St.3d 601, 602, 546 N.E.2d 928 (1988).

**{¶42}** In this case, during the defense counsel's closing arguments the state made four separate objections to defense counsel's closing remarks.

**{¶43}** First, in an effort to attack the credibility of Sade Edwards, Johnson's counsel argued that Sade Edwards was placed on probation a week after she gave her

statements to the police. The state objected arguing that the characterization of the evidence was not correct. In fact, at the time of trial, the evidence was that Edwards had not yet been sentenced but had been promised that the state would recommend probation in exchange for truthful testimony. (2T. at 546-547; 591). The Court sustained the objection and instructed the jury to disregard the comments. (3T. at 714).

{¶44} Second, Johnson's counsel argued that the expert testified that Calvin Johnson's DNA was excluded from the SCCY .9-millimeter handgun. (State's Exhibit 5). The state objected arguing that the statement was a mischaracterization of the evidence. In fact the DNA expert testified that the DNA of a male was detected but that there was too little DNA in the sample to be able to compare the sample to the DNA of the suspects. (2T. at 423). The expert further testified that a mixture of DNA had been obtained from the magazine of the gun, but there were too many people's DNA present in the sample. Therefore, the sample was not suitable for comparison. (2T. at 425-428). The Court sustained the objection and instructed the jury to disregard the comment stating, "I'm going to sustain the objection. Disregard the comment. As opposed to excluding, it was not exactly what was said, counsel." (3T. at 720).

{¶45} Third, Johnson's counsel argued that the state should have introduced the footage of witness testimony taken by officers' body cameras at the scene of the shooting. Counsel addressed the jury stating, "I know if I am sitting in this seat, I'm wanting to hear that stuff" The state objected to "what he wants" The Court simply sustained the objection. (3T. at 724).

{¶46} Finally, counsel for Johnson tells the jury that the Court will provide them with a final instruction and goes on to say "I believe." The state objected to what counsel

"believes." In response, the court simply stated "Well let's proceed", and permitted defense counsel to tell the jury that he believed the jury would take time to consider the evidence and would find that the evidence did not put his client anywhere near a gun. (3T. at 726).

**{¶47}** During the State's rebuttal, the prosecutor addressed Johnson's claim that Sade Edwards' testimony was not credible. The prosecutor said,

> But she is biased? How is she biased? Because she got 2 years?
> Because she drove a car that she didn't know anything about what was
> going to happen?

Counsel for Johnson objected saying,

> Objection. She didn't.

The court overruled the objection,

> Overruled. It is argument.

The State continued and stated,

> And she didn't get probation yet.

3T. at 733.

**{¶48}** A complete review of the record in the case at bar does not disclose on its face suggestions of hostility, favoritism, or a fixed anticipatory judgment. "Appellant's unsubstantiated accusations of improper conduct are insufficient to overcome the presumption of judicial integrity." *Cline v. Mtge. Electronic Registration Sys., Inc.*, 10th Dist. No. 13AP–240, 2013–Ohio–5706, ¶ 33, *citing Cooke v. United Dairy Farmers, Inc.*, 10th Dist. No. 05AP–1307, 2006–Ohio–4365.

**{¶49}** Johnson's second assignment of error is overruled.

III.

{¶50} In this assignment of error, Johnson argues that during direct examination, two investigating police officers improperly vouched for the credibility of Sade Edwards. Johnson argues the testimony was inadmissible and prejudicial.

{¶51} This issue was not raised at trial and no objection was made to the admission of the statements. Therefore, as previously discussed, the defense has forfeited all but plain error on appeal. *State v. Jackson*, 92 Ohio St.3d 436, 444 (2001), *citing State v. Underwood*, 3 Ohio St.3d 12, 444 N.E.2d 1332 (1983), syllabus; *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 8041 (1978).

{¶52} In *State v. Boston*, 46 Ohio St.3d 108, 128, 545 N.E.2d 1220 (1989), *overruled in part on other grounds by State v. Muttart*, 116 Ohio St.3d 5, 875 N.E.2d 944, 2007–Ohio–5267, the Ohio Supreme Court held that an expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant who claims she has been raped. In *Boston*, the court held that the trial court committed prejudicial error in allowing a physician to express her opinion that the child had not fantasized her abuse and had not been programmed to make accusations against her father.

{¶53} Recent case law states, "*Boston* does not apply when the child victim actually testifies and is subjected to cross-examination." *State v. Roush*, 10th Dist. No. 12AP–201, 2013–Ohio–3162, ¶ 61, *quoting State v. Benjamin*, 8th Dist. No. 87364, 2006–Ohio–5330, ¶ 19, *quoting State v. Curren,* 5th Dist. No. 04 CA 8, 2005–Ohio–4315, ¶ 26. When the child victim testifies, the trier of fact is able to ascertain the credibility of the victim; whereas, in *Boston*, there was no independent indicia of reliability save for the expert witness who vouched for the child victim. Thus, any error in admitting expert

testimony regarding the veracity of a child victim is harmless beyond a reasonable. *Accord, State v. Hughes,* 10th Dist. Franklin No. 14AP-360, 2015-Ohio-151, ¶49; *State v. Benjamin,* 8th Dist. Cuyahoga No. 87364, 2006-Ohio-5330, ¶19; *State v. Curren,* 5th Dist. Morrow No. 04 CA 8, 2005-Ohio-4315, ¶26; *State v. Bump,* 3rd Dist. Logan No. 8-12-04, 2013-Ohio-1006, ¶83; *Hupp v. Brunsman,* S.D. Ohio No. 3:10-cv-413, 2011 WL 4383623 (May 20, 2011), *11.

**{¶54}** Any error in admitting expert testimony regarding the veracity of a child declarant "may be harmless beyond a reasonable doubt * * * if the victim testifies and is subject to cross examination, the state introduces substantial medical evidence of sexual abuse, and the expert's testimony is cumulative to other evidence." *State v. Kincaid*, 9th Dist. No. 94CA005942, 1995 WL 608407 (Oct. 18, 1995), *citing State v. Palmer*, 9th Dist. No. 2323–M, 1995 WL 48442 (Feb. 8, 1995). "In contrast, a finding of harmless error is not justified if the case is a 'credibility contest' between the victim and the defendant." Id., *citing State v. Burrell*, 89 Ohio App.3d 737, 746, 627 N.E.2d 605 (1993). Recently, "appellate courts have limited that part of the holdings in *Kincaid* and *Palmer* that require additional medical evidence to cases involving small children." *State v. Skidmore*, 7th Dist. No. 08 MA 165, 2010–Ohio–2846, ¶ 27. *See also State v. Morrison*, 9th Dist. No. 21687, 2004–Ohio–2669, ¶ 65; *State v. Roush*, 2013-Ohio-3162, ¶ 62 (10th Dist. Franklin). We believe this test can be applied to a lay witness as well as an expert witness.

**{¶55}** During trial, the officers did not give a personal opinion on the truthfulness of Edwards's story. The record establishes that when they spoke with Edwards, they knew she had driven past Magee that evening from evidence they had obtain during their

investigation. Detective Welsh and Officer Shatzer simply testified that as a factual matter, they knew Edwards was lying because her version of the events could not be true based upon facts that the investigation had revealed.

{¶56} In the case at bar, Edwards testified and was subject to cross-examination. The jury had the opportunity to independently determine her credibility regardless of the testimony of the officers. In addition, the trial court properly instructed the jury that it was the sole judge of the facts and the sole determiner of the credibility of the witnesses. 3T. at 742.

{¶57} Further, the jury was able to see and hear Magee who testified that he recognized Johnson as one of the persons who had shot him and Cleve Johnson.

{¶58} The credibility of Edwards's recollection of events that night was bolstered by the facts in evidence. Specifically, Edwards's second story was consistent with Magee's testimony that he had seen her drive by earlier in the evening. Fingerprints from her vehicle corroborated her testimony that she was with Johnson, Campbell and Burnette. Her recollection of conversation between Campbell and Burnette was corroborated by the discovery of the firearms in the vicinity she described. Edwards's testimony was also consistent with DNA was recovered from a firearm that was discarded under a nearby house. Thus, this case was not a credibility contest as other evidence supported the conviction.

{¶59} Since the jury did have an opportunity to independently determine the credibility of Edwards and was properly instructed, any testimony that an officer believed Edwards was being truthful or untruthful was harmless beyond a reasonable doubt.

{¶60} Johnson's third assignment of error is overruled.

IV.

**{¶61}** In this assignment of error Johnson argues that the prosecutor committed misconduct in the following manners: First, by asking the investigating officers if they thought Sade Edwards was initially truthful about the events on the evening of the shooting; Second, by allowing the fingerprint analyst, Michelle Snyder, to state that a second examiner had verified her fingerprint results; and, third by misstating the facts and law in closing argument.   Johnson raises these issues as being prejudicial error for the first time on appeal therefor, as previously argued, Johnson has forfeited all but plain error analysis on appeal.   *State v. Saleh*, 10th Dist. No. 07AP-431, 2009-Ohio-1542, ¶68 (no objection to alleged prosecutorial misconduct during cross-examination reviewed under plain-error standard); *State v. Williams*, 79 Ohio St.3d 1, 12, 679 N.E.2d 646 (1997) (applying the plain-error standard to a prosecutorial misconduct claim).

**{¶62}** When evaluating a prosecutorial-misconduct claim, the relevant question is whether the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974).   To answer that question, we consider two factors: (1) whether the conduct was improper and (2) if so, whether it prejudicially affected the defendant's substantial rights.   *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 243.   *See State v. Belton*, —— Ohio St.3d ——, 2016-Ohio-1581, —— N.E.3d —— (Apr. 20, 2016), ¶ 125.

**{¶63}** Johnson first argues that it was improper for the state to ask the investigating officers if they thought Sade Edwards was initially truthful about the events on the evening of the shooting.   Secondly, the state committed misconduct by allowing

the fingerprint analyst, Michelle Snyder, to state that a second examiner had verified her fingerprint results.

**{¶64}** As we have previously noted in our disposition of Johnson's first and third assignments of error, the introduction of the officer's testimony was not error and the notation by Sarah Pivovat did not violate the confrontation clause nor did the introduction rise to the level of plain error. For the reasons previously stated as they relate to prosecutorial misconduct Johnson's argument is overruled.

**{¶65}** Johnson next contends the prosecutor committed misconduct in his rebuttal because he incorrectly stated that there was "absolutely no evidence, none whatsoever that there was a third gun" and he misstated the state's subpoena power.

**{¶66}** At trial, Edwards testified that Johnson stated he had thrown his "pole" or gun "in a hole underneath a porch." (2T. at 571-572). Edwards further testified that "Corey [Campbell] said something about he should threw [sic.] it on a boat." (2T. at 572). Edwards further testified that Chris Burnette said he still had his gun on him when he got into her car after the shooting. (2T. at 572).

**{¶67}** Magee testified that he saw two individuals shooting guns, Johnson and Campbell. (2T. at 504). He saw Corey Burnette in the back running around. (2T. at 503 504). Magee testified that he was in a great deal of pain and was mistaken if he had told the police that Burnette had been one of the shooters. (2T. at 514-515; 527-528). Magee referred to a .40 caliber as the gun that had been stolen from Johnson, not the gun used in the shooting. (2T. at 533-534). Johnson does not point to any specific portion of the transcript to support the theory that a third person had been shooting at Magee and Cleve Johnson.

**{¶68}** Johnson next argues that after he raised the fact that the only other witness to the shooting, Joe Williams, did not testify and the state did not present evidence recorded by the officers' point of view body recorders from the night of the shooting, the state responded "we can't make people come in here if they don't want to."

**{¶69}** In the case at bar, the state argued that the body camera videos were logged into evidence and were available to both the state and the defense. Similarly, the potential witnesses could be subpoenaed by either the state or the defense and provide relevant testimony. The state argued and the record reflects that one of the officers testified that even though there was a video of conversations with two potential witnesses to the shootings, those witnesses told the officers that they did not want to get involved. The state argued that you could not simply play videos of out-of-court statements because they are not subject to cross-examination. The state further argued that you could not force witnesses to cooperate in an investigation or a prosecution if they do not want to be involved. (3T. at 730-731).

**{¶70}** A prosecutor is entitled to a certain degree of latitude in closing arguments. *State v. Liberatore*, 69 Ohio St.2d 583, 589, 433 N.E.2d 561. Thus, it falls within the sound discretion of the trial court to determine the propriety of these arguments. *State v. Maurer*, 15 Ohio St.3d 239, 269, 473 N.E.2d 768(1984). A conviction will be reversed only where it is clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would not have found the defendant guilty. *State v. Benge*, 75 Ohio St.3d 136, 141, 1996-Ohio-227, 661 N.E.2d 1019. Furthermore, "[i]solated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." *Donnelly v. DeChristoforo*, 416 U.S. 637, 647, 94 S.Ct. 1868, 40 L.Ed.2d 431(1974).

**{¶71}** The state may comment upon a defendant's failure to offer evidence in support of its case. *State v. Collins*, 89 Ohio St.3d 524, 733 N.E.2d 1118(2000). "Such comments do not imply that the burden of proof has shifted to the defense, nor do they necessarily constitute a penalty on the defendant's exercise of his Fifth Amendment right to remain silent." Id. at 528-29, 733 N.E.2d 1118. The state must refrain from commenting on a decision not to testify, but the state may challenge the weight of evidence offered by the defense in support of its theory of the case. Id. The state does not have a duty to disprove every possible circumstance suggested by the defendant. Id.

**{¶72}** "[T]he fact that one of the parties fails to call a witness who has some knowledge of the matter under investigation may be commented upon." *State v. Petro*, 148 Ohio St. 473, 498, 162, 76 N.E.2d 355, 367(1948); *State v. Champion*, 109 Ohio St. 281, 289-290, 142 N.E. 141, 143-144(1924). *State v. D'Ambrosio* (1993), 67 Ohio St.3d 185, 193, 1993-Ohio-170, 616 N.E.2d 909,916(1993).

**{¶73}** In *State v. Clemons* the Ohio Supreme Court stated; "[t]he comment that the defense did not call an expert to testify that defendant "blacked out" during proceedings is not error. The comment that a witness other than the accused did not testify is not improper, *State v. D'Ambrosio* (1993), 67 Ohio St.3d 185, 193, 616 N.E.2d 909, 916, since the prosecution may comment upon the failure of the defense to offer evidence in support of its case. *State v. Williams* (1986), 23 Ohio St.3d 16, 19-20, 23 OBR 13, 16-17, 490 N.E.2d 906, 910-911; *State v. Bies* (1996), 74 Ohio St.3d 320, 326, 658 N.E.2d 754, 760." *Clemons, supra*, 82 Ohio St.3d 438, 452, 1998-Ohio-452, 692 N.E.2d 1009, 1022.

**{¶74}** In the case at bar, the state properly commented upon Johnson's failure to present other eyewitnesses to the shootings and failure to present the body camera audio and video evidence. The defense properly commented on the state's failure to present other eyewitnesses and their failure to present the body camera audio and video recordings.

**{¶75}** We further note the fact that a witness is under no obligation to speak with the attorney for the state or the attorney for the defense prior to trial. "(I)n modern criminal trials, defendants (as well as prosecutors) are rarely able to select their witnesses: they must take them where they find them." *Chambers v. Mississippi*, 410 U.S. 284, 296, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297(1973).

**{¶76}** The state's argument taken in context was that it could not force a witness to cooperate. In any event, Officer Seth Busche indicated that the uncooperative witness simply stated, "There were two shooters and they ran that way." (1T. at 183-185). Moreover, the trial court instructed the jury that it must decide the case on the evidence and that opening statements and closing arguments are not evidence. Officer's Vesco's testimony concerning a potential witness was placed before the jury and both sides were permitted to comment upon the others failure to present this and any other witness. (2T. at 627-628).

**{¶77}** "The prosecutors' argument did not manipulate or misstate the evidence, nor did it implicate other specific rights of the accused such as the right to counsel or the right to remain silent…." *Darden v. Wainwright* (1986), 477 U.S. 168, 181-182, 106 S.Ct. 2624, 2472.

**{¶78}** Johnson's fourth assignment of error is overruled.

V.

{¶79} Johnson's fifth assignment of error raises an ineffective assistance of counsel claim.  Specifically, Johnson argues that counsel was ineffective for the reasons set forth in his first, second and third assignments of error, i.e., counsel failed to object to the admission of the officer's testimony regarding Sade Edwards truthfulness; counsel failed to object to the testimony of fingerprint analyst, Michelle Snyder; and, counsel failed to object to the court's display of bias during closing arguments.

{¶80}  A claim of ineffective assistance of counsel requires a two-prong analysis.  The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant.  The second prong is whether the appellant was prejudiced by counsel's ineffectiveness.  *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180(1993); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373(1989).

{¶81}  In order to warrant a finding that trial counsel was ineffective, the petitioner must meet both the deficient performance and prejudice prongs of *Strickland* and *Bradley. Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 1419, 173 L.Ed.2d 251(2009).

{¶82}  The United States Supreme Court discussed the prejudice prong of the *Strickland* test,

With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id., at

694, 104 S.Ct. 2052.  It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding."  Id., at 693, 104 S.Ct. 2052.  Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Id., at 687, 104 S.Ct. 2052.

"Surmounting *Strickland'*s high bar is never an easy task."  *Padilla v. Kentucky*, 559 U.S. ——, ——, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010).  An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve.  *Strickland*, 466 U.S., at 689–690, 104 S.Ct. 2052.  Even under de novo review, the standard for judging counsel's representation is a most deferential one.  Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.  It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence."  Id., at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).  The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom.  *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.

*Harrington v. Richter,* __U.S.__, 131 S.Ct. 770, 777-778, 178 L.Ed.2d 624(2011).

**{¶83}** The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Bradley,* 42 Ohio St.3d at 143, 538 N.E.2d 373, *quoting Strickland,* 466 U.S. at 697, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984).

**{¶84}** "'The failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel.'" *State v. Fears*, 86 Ohio St.3d 329, 347, 715 N.E.2d 136 (1999), *quoting State v. Holloway*, 38 Ohio St.3d 239, 244, 527 N.E.2d 831(1988) *Accord, State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶233. A defendant must also show that he was materially prejudiced by the failure to object. *Holloway*, 38 Ohio St.3d at 244, 527 N.E.2d 831.

**{¶85}** A defendant has no constitutional right to determine trial tactics and strategy of counsel. *State v. Cowans*, 87 Ohio St.3d 68, 72, 717 N.E.2d 298 (1999); *State v. Conway,* 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 150; *State v. Donkers,* 170 Ohio App.3d 509, 867 N.E.2d 903, 2007-Ohio-1557, ¶ 183(11th Dist.). Rather, decisions about viable defenses are the exclusive domain of defense counsel after consulting with the defendant. Id. When there is no demonstration that counsel failed to research the facts or the law or that counsel was ignorant of a crucial defense, a reviewing court defers to counsel's judgment in the matter. *State v. Clayton*, 62 Ohio St.2d 45, 49, 402 N.E.2d 1189(1980), citing *People v. Miller*, 7 Cal.3d 562, 573-574, 102 Cal.Rptr. 841, 498 P.2d 1089(1972); *State v. Wiley*, 10th Dist. No. 03AP-340, 2004- Ohio-1008 at ¶ 21. Even if the wisdom of an approach is questionable, "debatable trial tactics" do not

constitute ineffective assistance of counsel. Id. "Poor tactics of experienced counsel, however, even with disastrous result, may hardly be considered lack of due process * * *." *State v. Clayton*, 62 Ohio St.2d 45, 48, 402 N.E.2d 1189 (1980)(*quoting United States v. Denno,* 313 F.2d 364 (2nd Cir. 1963), *certiorari denied* 372 U.S. 978, 83 S.Ct. 1112, 10 L.Ed.2d 143.

{¶86} Even assuming that Johnson could demonstrate that defense counsel performed deficiently, he must also prove that he was prejudiced by counsel's deficient performance. *Strickland*, 466 U.S. at 691–692, 104 S.Ct. 2052, 80 L.Ed.2d 674. *See, State v. Obermiller,* 147 Ohio St.3d 175, 2016-Ohio-1594, ¶ 93 (Apr. 20, 2016).

{¶87} To show prejudice, he must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. 2052. The prejudice inquiry, thus, focuses not only on outcome determination, but also on "whether the result of the proceeding was fundamentally unfair or unreliable." *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

{¶88} Johnson first argues that his counsel was ineffective for his failure to object to the officer's testimony that Sade Edwards was initially untruthful

{¶89} We have found in our disposition of Johnson's third assignment of error, that the prosecutor's questioning and the officers' testimony was proper. Further, the jury was able to see and hear Edward and the officers on cross-examination, hear the testimony

of Magee and review the physical evidence. Thus, there is little chance that the officer's testimony concerning Edwards's initial truthfulness affected the verdict in this case.

**{¶90}** Johnson also argues that counsel was ineffective for failure to object to the testimony of the fingerprint analyst. We have found in our disposition of Johnson's first assignment of error the testimony of the fingerprint analyst concerning verification of her results constituted harmless error beyond a reasonable doubt. *See State v. Thompson*, 33 Ohio St.3d 1, 4–5, 514 N.E.2d 407 (1987). Independent evidence established that Johnson was in Edwards's car at the time of the shooting. Thus, there is little chance that the fingerprint analyst's testimony concerning Johnson's fingerprints on the Edwards's car affected the verdict in this case.

**{¶91}** Finally, Johnson argues that counsel was ineffective for failure to object to judicial bias in during closing arguments of counsel. We have found in our disposition of Johnson's second assignment of error Johnson has failed to establish that the court was biased and that the court's responses to the objections were prejudicial. Thus, there is little chance that trial court's conduct affected the verdict in this case.

**{¶92}** Because we have found no instances of prejudicial error in this case, we find Johnson has not demonstrated that he was prejudiced by trial counsel's performance.

**{¶93}** Johnson's fifth assignment of error is overruled.

VI.

**{¶94}** In his sixth assignment of error, Johnson contends that his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence.

**{¶95}** Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61

L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.; see also *McDaniel v. Brown*, 558 U.S. 120, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry*, 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017, ¶146; *State v. Clay*, 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶68.

**{¶96}** Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997). Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue, which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." Id. at 387, 678 N.E.2d 541, *quoting* Black's Law Dictionary (6th Ed. 1990) at 1594.

**{¶97}** When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the fact finder's resolution of the conflicting testimony. Id. at 387, 678 N.E.2d 541, *quoting Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v.*

*Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721 (1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" Id.

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.

\* \* \*

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶98} In this case, the jury found Johnson guilty of complicity to commit the murder of Cleave Johnson, two counts of complicity to commit felonious assault, and tampering with evidence.

{¶99} R.C. 2923.03(A)(2) sets forth the elements for complicity and provides that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall \* \* \* [aid or abet another in committing the offense [.]"

{¶100} With respect to the requirements for a conviction for complicity by aiding and abetting, the Supreme Court of Ohio has stated,

"To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime.

*State v Johnson,* 93 Ohio St.3d 240, 2001-Ohio-187, 749 N.E.2d 749, at syllabus.

{¶101} R.C. 2903.02(B) sets forth the elements for murder and states,

(B) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code.

{¶102} R.C. 2903.11(A)(2) sets forth the elements for felonious assault,

No person shall knowingly * * * [c]ause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance." (In this case, the deadly weapon being a firearm.)

{¶103} R.C. 2901.22(B) defines knowingly,

A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist.

{¶104} In the case at bar, there is no dispute that Magee and Cleve Johnson were shot. Further, there is no dispute that Cleve Johnson died as a result of the gunshot

wound he received. Magee suffered serious and permanent injuries to his leg as a result of the gunshot wound he received. Thus, the only question is whether the evidence established beyond a reasonable doubt that Johnson aided and abetted in the shootings.

{¶105} The jury heard eyewitness testimony from Magee that Johnson was one of the individual who shot at him and Johnson. At trial, Edwards testified that Johnson stated he had thrown his "pole" or gun "in a hole underneath a porch." (2T. at 571-572). Edwards further testified that "Corey [Campbell] said something about he should threw [sic.] it on a boat." (2T. at 572). Edwards further testified that Chris Burnette said he still had his gun on him when he got into her car after the shooting. (2T. at 572). Edwards also overheard Johnson say to Burnett, "Cuz why did you start shooting so fast? I thought we was going to get closer."

{¶106} Cory Campbell, Johnson's brother and co-defendant testified on Johnson's behalf at trial that Johnson was in Edwards' car at the time of the shootings. He further testified that Johnson, Campbell and Burnette were with Edwards in the immediate area of the shooting.

{¶107} Officers recovered a Highpoint .9-millimeter handgun, magazine and SYCC .9-millimeter handgun. An officer testified that the recovered guns had been recently fired. Officers at the scene collected shell casings from the areas where Magee stated Johnson and Brunette had been shooting. The shell casings matched the handguns recovered that evening to the exclusion of all other weapons. Forensic analysis established that Brunette's DNA was on the Highpoint weapon and the SYCC .9-millimeter weapon had evidence of male DNA.

{¶108} If the state relies on circumstantial evidence to prove an essential element of an offense, it is not necessary for "'such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction.'" *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492(1991) at paragraph one of the syllabus. "'Circumstantial evidence and direct evidence inherently possess the same probative value [.]'" *Jenks*, 61 Ohio St.3d at paragraph one of the syllabus. Furthermore, "'[s]ince circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that i[t] weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt.'" *Jenks,* 61 Ohio St.3d at 272, 574 N.E.2d 492. While inferences cannot be based on inferences, a number of conclusions can result from the same set of facts. *State v. Lott*, 51 Ohio St.3d 160, 168, 555 N.E.2d 293(1990), *citing Hurt v. Charles J. Rogers Transp. Co.* , 164 Ohio St. 329, 331, 130 N.E.2d 820(1955). Moreover, a series of facts and circumstances can be employed by a jury as the basis for its ultimate conclusions in a case. *Lott,* 51 Ohio St.3d at 168, 555 N.E.2d 293, *citing Hurt,* 164 Ohio St. at 331, 130 N.E.2d 820.

{¶109} Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Johnson participated in the shootings of Cleve Johnson and Magee and that he had a firearm on his person during each incident. Further, the evidence established that Johnson disposed of his weapon after the shooting.

{¶110} We hold, therefore, that the state met its burden of production regarding complicity to commit the murder of Cleave Johnson, two counts of complicity to commit

felonious assault, and tampering with evidence, and, accordingly, there was sufficient evidence to support Johnson's convictions.

{¶111} As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence, upon which the fact finder could base his or her judgment. *Cross Truck v. Jeffries*, 5th Dist. Stark No. CA–5758, 1982 WL 2911(Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction*, 54 Ohio St.2d 279, 376 N.E.2d 578(1978). The Ohio Supreme Court has emphasized: "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *.'" *Eastley v. Volkman,* 132 Ohio St.3d 328, 334, 972 N.E. 2d 517, 2012-Ohio-2179, *quoting Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191–192 (1978). Furthermore, it is well established that the trial court is in the best position to determine the credibility of witnesses. *See, e.g., In re Brown*, 9th Dist. No. 21004, 2002–Ohio–3405, ¶ 9, *citing State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967).

{¶112} Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the fact finder lost its way.'" *State v. Pallai*, 7th Dist. Mahoning No. 07 MA 198, 2008-Ohio-6635,

¶31, *quoting State v. Woullard*, 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964 (2nd Dist. 2004), ¶ 81.  In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe."  *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002-Ohio-1152, at ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999).

{¶113} The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact.  *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967), paragraph one of the syllabus; *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶118.  *Accord, Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).

{¶114} The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility.  "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence."  *State v. Craig*, 10th Dist. Franklin No. 99AP-739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09-1236, 1996 WL 284714 (May 28, 1996).  Indeed, the jury need not believe all of a witness' testimony, but may accept only portions of it as true.  *State v. Raver,* 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke,* 10th Dist. Franklin No. 02AP-1238, 2003-Ohio-2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992).  Although the

evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks,* 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997).*

{¶115} In the case at bar, the jury heard the witnesses, viewed the evidence and heard Johnson's arguments concerning the lack of evidence and non-believability of the state's witnesses.

{¶116} We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. The jury neither lost his way nor created a miscarriage of justice in convicting Johnson of the charges.

{¶117} Based upon the foregoing and the entire record in this matter, we find Johnson's convictions are not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury as a trier of fact can reach different conclusions concerning the credibility of the testimony of the state's witnesses and Johnson's witnesses and his arguments. This court will not disturb the jury's finding so long as competent evidence was present to support it. *State v. Walker*, 55 Ohio St.2d 208, 378 N.E.2d 1049 (1978). The jury heard the witnesses, evaluated the evidence, and was convinced of Johnson's guilt.

{¶118} Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crimes for which Johnson was convicted.

{¶119} Johnson's sixth assignment of error is overruled.

{¶120} The judgment of the Stark County Court of Common Pleas, Stark County, Ohio is affirmed.


By Gwin, P.J.,

Wise, J., and

Baldwin, J., concur